IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NOEL K. BANGO,
    Plaintiff,

vs.                                         Case No.: 3:03cv576/MCR/EMT

JAMES CROSBY, et al.,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    This cause is before the court on Plaintiff's Third Amended Civil Rights Complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 72). Leave to proceed in forma pauperis has been granted (Doc. 9).

    Named as Defendants in this action are the following employees of the Santa Rosa Correctional Institution ("SRCI"): Warden Joseph Petrovsky, Colonel Riggs, Lieutenant G. H. Guy, Sergeant C. Smith and Correctional Officer Lenzo (Doc. 72 at 1-2).[1] Plaintiff alleges Defendants violated his First Amendment rights by retaliating against him for filing grievances and lawsuits (*id.* at 30-33). He additionally alleges Defendant violated his Eighth Amendment rights by twice housing him with inmates known to be violent (*id.*). Plaintiff seeks various forms of injunctive relief and monetary damages (*id.* at 30, 34).[2] After careful consideration, it is the opinion and

---

[1] Plaintiff's third amended complaint (Doc. 72) is a 45 page document. Unless otherwise noted, all references to the page numbers of this complaint are to the page number assigned by the clerk of court.

[2] Specifically, Plaintiff seeks an injunction preventing ongoing assaults against him; preventing Defendants from operating under a policy of tolerance of retaliation against inmates who file grievances and lawsuits; requiring Defendants to install an audio-video system which will pick up conversations between officers and inmates; requiring Defendants to train their guards "properly"; and requiring Defendants to provide immediate protective management for inmates most vulnerable to assault. Additionally, Plaintiff seeks compensatory damages in the amount of $250,000.00

recommendation of the undersigned that Plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted.

**I.     BACKGROUND**

Plaintiff alleges the following facts in support of his claims.  Plaintiff filed an informal grievance on August 10, 2003, stating that unknown officers had "dumped" his belongings (*id.* at 35).  On August 20, 2003, Defendant Lenzo told Plaintiff that things were going to start happening to him and that "somebody [was] going to shut [him] up" if he filed a grievance against Defendant Lenzo (*id.* at 27). On August 23, 2003, while Plaintiff was in the shower, Defendant Lenzo emptied Plaintiff's belongings from his locker and did not properly replace them (*id.* at 27).  On August 25, 2003, Plaintiff filed a grievance against Defendant Lenzo for threatening him on August 20, 2003 and retaliating against him on August 23, 2003 by mishandling his belongings (*id.* at 23, 27, 44). Plaintiff contends that, in retaliation for filing grievances, Defendant Lenzo conspired with his fellow officers, concocted a story that Plaintiff had engaged in disorderly conduct, and prepared a false disciplinary report (*id.* at 22-23).

On September 2, 2003, Plaintiff filed an informal grievance against Defendant Smith for discriminating against him by allowing other inmates access to the day room and telephone, but restricting Plaintiff's access (*id.* at 27).  Two days later Defendant Smith approached Plaintiff's cell with the informal grievance and threatened to suspend his day room privileges for thirty days and to write a new disciplinary report if Plaintiff continued pursuing the grievance (*id.* at 27-28).

On the morning of September 9, 2003, Plaintiff attended a hearing regarding the disciplinary report filed by Defendant Lenzo (*id.* at 22-23).  Plaintiff was escorted to the hearing by Defendant Smith and adjudicated guilty by Defendant Guy (*id.* at 22-23, 28).  Defendant Smith then escorted Plaintiff to a cell for disciplinary confinement and placed him in a cell with another inmate, Larry Williams, who Plaintiff alleges has a history of attacking at least two other inmates (*id.* at 21, 23, 28).  Plaintiff contends that any knowledgeable observer would know that placing him in the cell with Williams would inevitably result in an attack by Williams (*id.* at 23).   Plaintiff reminded Defendant Smith about Williams' history of violence against other inmates, but Defendant Smith

---

and punitive damages in the amount of $150,000.00.

Case No.:  3:03cv576/MCR/EMT

required Plaintiff to enter the cell nonetheless (*id.* at 23, 28). Approximately fifteen minutes later, an officer looked into the cell and smiled (*id.* at 23, 28). The officer returned after another fifteen minutes and said "three to eleven," which Plaintiff contends was a sign to attack Plaintiff on the three to eleven shift (*id.* at 23, 28).

Plaintiff alleges that later that afternoon, at approximately 2:45 p.m., Williams returned from outside recreation (*id.* at 23, 28). Within a few minutes of entering the cell, Williams began hitting Plaintiff in the face and kicking him in the ribs (*id.*). Plaintiff went to the cell door and called for help (*id.* at 24). Officers Jacobus and Rogers approached the cell, saw that Williams was about to attack again, and ordered Williams to the rear of the cell (*id.* at 24). Williams obeyed, and Plaintiff was placed in restraints and escorted to a holding cell (*id.* at 24). Defendant Smith then approached Plaintiff and stated, "Inmate Bango, didn't myself and Lt. Swail spoke [sic] to you about filing grievances?" (*id.* at 24). Plaintiff told Defendant Smith he could write all of the disciplinary reports he wanted, but Plaintiff was going to continue exercising his rights (*id.* at 24). Defendant Smith said "okay" and walked away (*id.* at 24).

According to Plaintiff, Defendant Guy appeared shortly after Defendant Smith left and said, "You like writing up my officers, huh? You see this pen, I can do anything with it, and you can't prove anything. I have six captain and lieutenant friends. Next time, I'll put you in a cell with someone twice your size, maybe not" (*id.* at 24). Defendant Guy then escorted Plaintiff to the infirmary and stood by staring at him and trying to intimidate him (*id.* at 24). Defendant Guy later ordered that Plaintiff be housed with inmate Ramos, who Plaintiff alleges also had incident reports for attacking other inmates (*id.* at 24). Upon Plaintiff's entrance to Ramos' cell, Ramos shook his fist in Plaintiff's face and threatened to hurt him if he did not remain silent and sit in the corner (*id.* at 24). At the same time, Defendant Lenzo approached Ramos and said, "Don't beat him up yet, Pappy. Wait until after dinner." (*id.* at 24-25). Plaintiff claims that Defendant Lenzo then placed Plaintiff's mail in the door and said, "I would hate to be you" (*id.* at 25). Plaintiff alleges that Ramos ordered him around the cell and made derogatory statements about African Americans (*id.* at 25). Early the next morning, "having had enough, in fear of his life, and wanting to report and file his grievances elsewhere," Plaintiff went to the "SOS" cell by declaring a psychiatric emergency (*id.* at 25).

Plaintiff was transferred to a mental health facility on September 18, 2003, and returned to SRCI on October 14, 2003 (*id.* at 25). Plaintiff claims that on October 28, 2003, Defendant Guy's threat was carried out when Plaintiff was physically assaulted by his cellmate as security watched (*id.* at 25). Plaintiff further claims he was attacked on January 24, 2004 by inmate Jones, who told Plaintiff that security guards directed him to attack Plaintiff and told him that Plaintiff was a trouble maker (*id.* at 25).

As noted *supra*, Plaintiff alleges Defendants violated his First Amendment rights by retaliating against him for filing grievances and lawsuits. Additionally, Plaintiff claims that Defendants violated the Eighth Amendment by twice housing him with inmates known to be violent.

## II.   ANALYSIS

Because Plaintiff is proceeding in forma pauperis, this Court has a statutory duty to dismiss this action at any time if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a Defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). The court must read Plaintiff's pro se allegations in a liberal fashion. Haines v. Cornier, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all facts set forth in the complaint as true. *See* Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint fails to state a claim only when it appears beyond all doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See* Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 923 (11th Cir. 1997). Because the language of section 1915 tracks the language of Fed.R.Civ.P. 12(b)(6), Rule 12(b)(6) standards apply in determining whether a Plaintiff's case is subject to dismissal under section 1915(e)(2)(B)(ii). *See* Mitchell v. Farcass, 112 F.3d 1483, 1487 (11th Cir. 1997).

### A.   Exhaustion

Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement applies to all inmate suits about any aspect of prison life, including cases in which the inmate seeks only monetary damages. *See* Booth v. Churner, 532 U.S. 731, 121 S.Ct.1819, 1825, 149 L.Ed.2d 958 (2001); Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).  Thus, the court should dismiss a case if it determines that exhaustion has not been accomplished.  Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998); *see also* Anderson v. Singletary, 111 F.3d 801, 805 (11th Cir. 1997).  "A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."  Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998).

Florida regulations establish a three-step grievance process within state institutions that includes an informal grievance, formal grievance and appeal to the office of the Secretary of the Department of Corrections.  *See* Fla. Admin. Code rr. 33-103.005 to 103.007 (2003).  Grievances of reprisals may bypass the informal grievance step and, in certain situations, may even be filed directly with the Secretary of the DOC.  *Id.*, rr. 33-103.006(3), 33-103-007(6).

Plaintiff was advised of the exhaustion requirement in this Court's previous orders to amend, and he was specifically directed to provide proof of exhaustion (*see* Doc. 15, n.2; Doc. 39). Although Plaintiff submitted numerous grievances in an effort to demonstrate exhaustion, he has failed to demonstrate exhaustion of all but one claim raised in his third amended complaint (*see* Doc. 72 at 35-45).

Regarding Plaintiff's claims against Defendant Guy, although Plaintiff filed informal and formal grievances concerning Defendant Guy's threats, attempt to intimidate him, ordering that he be housed with inmate Ramos and encouraging Ramos to assault him, Plaintiff did not appeal the denial of those grievances to the Secretary of the Department of Corrections.  Additionally, Plaintiff failed to show he filed any grievances concerning his claims that Defendant Guy caused another prisoner to assault him on October 28, 2003, falsified disciplinary reports, failed to have Plaintiff x-rayed following an assault, failed to protect him from other prisoners, failed to stop retaliation executed by officers under his command, and failed to protect his "rights."  Accordingly, Plaintiff has not exhausted his administrative remedies as to his claims against Defendant Guy.

As to Plaintiff's claims that Defendant Smith threatened him on September 4, 2003 and placed him in a cell with inmate Williams knowing that Williams would assault him, Plaintiff did

not exhaust his administrative remedies prior to filing this lawsuit. Plaintiff filed an informal grievance concerning this matter on September 22, 2003, which was denied on October 6, 2003 (Doc. 72 at 45). He then filed a formal grievance on October 18, 2003, which was denied on October 28, 2003 (*id.* at 43). Plaintiff appealed the denial to the Secretary of the Department of Corrections on December 3, 2003 (Doc. 14 at 2). However, he commenced this lawsuit on December 16, 2003 (*see* Doc. 1), prior to the Secretary's response.[3] Thus, Plaintiff had not fully exhausted those administrative remedies available to him prior to filing this lawsuit as required. The district court lacks discretion to resolve the claim on the merits, even if a prisoner has exhausted intraprison remedies before judgment. *See* Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 534-535 (7th Cir. 1999); 42 U.S.C.A. § 1983; *see also* Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998) (exhaustion is a precondition to suit). Furthermore, Plaintiff has failed to show that he filed grievances regarding his claim that Defendant Smith falsified a disciplinary report. Accordingly, Plaintiff's claims against Defendant Smith should be dismissed.

      Finally, Plaintiff filed no grievances regarding his Eighth Amendment claim that Defendant Lenzo failed to protect him from other inmates; therefore, that claim should be dismissed. However, Plaintiff filed several grievances concerning his First Amendment claims against Defendant Lenzo. On August 10, 2003, Plaintiff filed an informal grievance stating that his property had been mishandled, although he failed to identify the party responsible for this (Doc. 72 at 35). On August 25, 2003, Plaintiff filed a formal grievance stating that Defendant Lenzo and his "conspirators" continued to exhibit little or no care toward his property; that threats were made on August 20, 2003 and carried out on August 23, 2003, "relevant to handling [his] property"; and due to this reprisal he had proceeded to the next administrative level (*id.* at 44). Then, on September 9, 2003, Plaintiff filed an appeal with the Secretary of the Florida Department of Corrections in which he stated that the mishandling of his property had ceased, however, he also referred the Secretary to the August 10, 2003 and August 25, 2003 grievances "for other complaints" (Doc. 47, Ex. G at 4). Giving Plaintiff the benefit of the doubt, it appears he properly exhausted his claim concerning the

---

[3]Pursuant to Department of Corrections regulations, the Office of the Secretary has thirty (30) days to respond (*see* Fla. Adm. Code r. 33-103.011(3)(c)).

Case No.: 3:03cv576/MCR/EMT

mishandling of his property in retaliation for filing grievances, therefore, that claim is addressed below.

### B.  First Amendment Claim

It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of First Amendment rights.  *See* Farrow v. West, 320 F.3d 1235, 1248 (11th Cir.2003); Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir.1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir.1986); Adams v. James, 784 F.2d 1077, 1080 (11th Cir.1986).  In the prison setting "[t]he state may not burden [First Amendment rights] with practices that are not reasonably related to legitimate penological objectives . . . nor act with the intent of chilling that First Amendment right."  Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir.1995) (citing Turner v. Safley, 482 U.S. 78, 85-89, 107 S.Ct. 2254, 2260-61, 96 L.Ed.2d 64 (1987), and Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir.1989)).  In general, a prisoner may establish retaliation by "demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'"  Farrow, 320 F.3d at 1248 (citing Wildberger, 869 F.2d at 1468).  The prisoner must, however, come forward with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that Plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (citations omitted).  Indeed, while mindful that a plaintiff may not be held to a heightened burden of proof, *see* Crawford-El, 523 U.S. at 580-86, 118 S.Ct. 1584 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions and actions of prison officials and "the ease with which claims of retaliation may be fabricated." Dawes v. Walker, 239 F.3d 489, 491 (2nd Cir. 2001), *impliedly overruled in part on other grounds by* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

In the instant case, Plaintiff first filed an informal grievance on August 10, 2003, stating that his property had been mishandled on August 6, 2003 while he was in the shower (Doc. 72 at 35). However, he does not allege that this was done in retaliation for anything; he states simply that his property was mishandled in violation of "F.A.C. rules" (*id.*).  On August 25, 2003, Plaintiff filed a

formal grievance[4] against Defendant Lenzo, which included allegations that Defendant Lenzo threatened him on August 20, 2003, and "emptied out Plaintiff's locker twice . . . actually, he encouraged and conspired for his fellow officers to do it" on August 23, 2003 (*id.* at 27, 44). However, the sequence of events does not suggest that the emptying of Plaintiff's locker occurred as a result of Plaintiff's filing a grievance against Defendant Lenzo. Plaintiff does not allege Defendant Lenzo was named in the informal grievance filed on August 10, 2003, nor does Plaintiff allege facts showing that Defendant Lenzo even knew about that grievance. Furthermore, although Defendant Lenzo was named in Plaintiff's formal complaint, it was not filed until August 25, 2003, after the alleged retaliatory conduct on August 20 or 23, 2003. Accordingly, Plaintiff has failed to state a First Amendment retaliation claim against Defendant Lenzo.

### C.     Respondeat Superior

As a final matter, to the extent that Plaintiff alleges supervisory liability claims against Defendants Petrovsky, Riggs and Guy, those claims should be dismissed. Plaintiff apparently seeks to hold these Defendants liable on a respondeat superior theory of liability. It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000).

---

[4] Although Plaintiff characterizes this as an informal grievance (*see* Doc. 72 at 27), it is actually a formal grievance (*see id.* at 44).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege facts showing that Defendants Petrovsky, Riggs and Guy personally participated in the alleged constitutional violations. However, Plaintiff appears to contend there is a causal connection between these Defendants' actions and the alleged Constitutional violations based on their failure to train and supervise the correctional officers under their control (Doc. 72 at 8, 20, 21, 31). Initially, Plaintiff offers no facts in support of his bare allegation that Defendant Guy failed to train Defendant Smith. Furthermore, Plaintiff does not allege that Defendant Guy or any other supervisor had knowledge that particular subordinates had a past history of committing violations of prisoners' Constitutional rights so as to put the supervisors on notice of need to correct or stop their conduct.

Additionally, Plaintiff alleges that Defendants Petrovsky, Riggs and Guy operated under a custom or policy of tolerance of retaliation (Doc. 72 at 26). However, Plaintiff's allegation is vague and conclusory, and fails to identify any specific policy implemented by Defendants. *Cf.* Johnson v. California, 125 S.Ct. 1141, 1144, 160 L.Ed.2d 949 (2005) (plaintiff identified the existence of a specific policy requiring the racial segregation of prisoners, and it was undisputed that the policy existed). Furthermore, Plaintiff does not allege that any of these Defendants directed subordinates

to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so. Accordingly, Plaintiff had failed to establish the necessary causal connection between the supervisors and the unconstitutional conduct at issue for supervisory liability to be imposed. Therefore, his claims against Defendants Petrovsky, Riggs, and Guy should be dismissed.

Accordingly, it is respectfully **RECOMMENDED**:

1. That this cause be **DISMISSED** for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That the clerk be directed to close the file.

At Pensacola, Florida this 19th day of October 2005.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**